J-A07042-19

2019 PA Super 125

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN CEPHUS | : | |
| | : | |
| Appellant | : | No. 1275 EDA 2018 |

Appeal from the Judgment of Sentence April 16, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0005962-2016

BEFORE:   OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED APRIL 24, 2019**

Appellant Jonathan Cephus appeals the judgment of sentence entered by the Court of Common Pleas of Montgomery County after the lower court convicted Appellant of Persons Not to Possess a Firearm,[1] Firearms not to be Carried Without a License,[2] Possession of Drug Paraphernalia,[3] and Driving on Roadways Laned for Traffic.[4]  Appellant claims the lower court erred in denying his motion to suppress evidence from a stop of his vehicle that was not justified by the requisite suspicion.

We recognize the difficulties law enforcement officers face in deciding whether to stop a vehicle for disregarding defined lanes of traffic, as our decisions analyzing the validity stops based on a violation of Section 3309(1) of the Vehicle Code have been inconsistent.  After careful review, we affirm.

---

[1] 18 Pa.C.S.A. § 6105(a)(1).
[2] 18 Pa.C.S.A. § 6106(a)(1).
[3] 35 P.S. § 780-113(a)(32).
[4] 75 Pa.C.S.A. § 3309(1).

---

*   Former Justice specially assigned to the Superior Court.

On July 29, 2016, at 1:30 a.m., while traveling westbound on Route 422 in Limerick Township, Trooper Robert Beyer and Trooper Mark Musser observed a silver Cadillac crossing over the center dotted line dividing the two westbound lanes of Route 422. After noticing the driver of the Cadillac was having trouble maintaining his lane, Trooper Beyer activated the patrol car's dash camera to record and monitor the Cadillac's movements.

When asked how many times he saw the Cadillac cross the center line, Trooper Beyer responded "I believe it was three times." N.T., 4/19/17, at 8. The dash camera footage shows the Cadillac crossing over the center line three times in a twenty-second period, in which both of its driver's side tires consistently remained over the center line. Trooper Beyer estimated that the Cadillac traveled "a couple hundred yards" in the time the dash camera was recording, but indicated he was unsure of the actual distance. *Id*. at 22. Trooper Beyer could not recall how many times he observed the Cadillac cross over the center line before the dash camera was activated.

Upon observing that the driver of the Cadillac was "unable to maintain its lane several times," the troopers initiated a traffic stop of the vehicle. *Id*. at 8. Once Trooper Beyer approached the vehicle, he immediately smelled a strong odor of marijuana emanating from the car, observed numerous air fresheners in the car, and noticed the driver, Appellant, was sweating.

Appellant complied with Trooper Beyer's request to exit the vehicle and consented to a search of the vehicle. Trooper Beyer discovered a handgun in the center console and drug paraphernalia in the vehicle. At that point,

Trooper Beyer stopped his search and placed Appellant in handcuffs. Trooper Beyer had to call for emergency personnel as Appellant passed out.

Once Appellant was charged with the aforementioned offenses, he filed a suppression motion, which the trial court subsequently denied. After a bench trial, Appellant was convicted of Persons Not to Possess a Firearm, Firearms not to be Carried Without a License, Drug Paraphernalia, and Driving on Roadways Laned for Traffic. On April 16, 2018, the trial court sentenced Appellant to an aggregate term of five to ten years' imprisonment. Appellant filed a timely post-sentence motion, which the trial court subsequently denied.

Appellant filed a *pro se* notice of appeal on April 30, 2018. The lower court directed the Public Defender of Montgomery County to determine whether Appellant desired the assistance of counsel or wanted to proceed *pro se*, so that the lower court could schedule a **Grazier** hearing, if necessary. On May 17, 2018, the Public Defender's Office formally entered its appearance on behalf of Appellant, who indicated that he wanted the assistance of counsel on appeal. Appellant complied with the trial court's direction to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

Appellant's sole argument on appeal is that the trial court erred in denying his suppression motion as he alleges that he was subjected to an unlawful vehicle stop that was not justified by probable cause. When reviewing a trial court's decision to deny a suppression motion, our standard of review is as follows:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record.... Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." **Commonwealth v. Gallagher**, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. **In re L.J.**, 79 A.3d 1073, 1087 (Pa. 2013). In addition, questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. **Commonwealth v. Freidl**, 834 A.2d 638, 641 (Pa. Super. 2003).

**Commonwealth v. Lloyd**, ____A.3d____, 1469 WDA 2017, at *5 (Pa.Super. 2019).

Section 6308(b) of the Motor Vehicle Code defines the requisite level of suspicion for a traffic stop:

Whenever a police officer ... has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).  However, "[t]raffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code

under the authority of Section 6308(b) must serve a stated investigatory purpose." *Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa.Super. 2010) (*en banc*) (citation omitted). For a stop based on the observed violation of the vehicle code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop. *Id.* ("Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation").

In this case, Trooper Beyer initiated a traffic stop based on Appellant's disregard for traffic lanes pursuant to Section 3309(1) of the Motor Vehicle Code ("Driving on Roadways Laned for Traffic"), which provides:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:
>
> **(1) Driving within single lane.--**A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S.A. § 3309(1). This Court has found that an officer must have probable cause to justify a traffic stop for a violation of Section 3309(1). *Feczko*, 10 A.3d at 1292.

> To determine whether probable cause exists, we must consider whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.

*Commonwealth v. Ibrahim*, 127 A.3d 819, 824 (Pa.Super. 2015) (quoting *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988, 990 (1991)) (quotation marks omitted). In *Commonwealth v. Anderson*, 889 A.2d 596 (Pa.Super. 2005), this Court found that the vehicle stop was supported by probable cause as the arresting officer observed Anderson's vehicle straddling the double yellow lines for two blocks, stopping for an inordinate and inexplicable amount of time without being prompted to do so by traffic signals.[5]

In this case, Trooper Beyer had probable cause to stop Appellant's vehicle for a violation of Section 3309(1). After Trooper Beyer initially took notice to Appellant's vehicle crossing over the center dotted line dividing the westbound lanes of Route 422, Trooper Beyer activated his patrol car's dash camera to monitor Appellant's movements. Although Trooper Beyer could not recall how many times he saw Appellant's vehicle cross the center line before he activated the camera, it is reasonable to infer that Trooper Beyer observed Appellant's vehicle exit his lane on *at least* one occasion to cause Trooper Beyer to activate the dash camera.

Thereafter, the dash camera footage, which was entered into evidence at the suppression hearing, clearly shows Appellant's vehicle drift over the

---

[5] *But see Commonwealth v. Gleason*, 567 Pa. 111, 112, 785 A.2d 983, 983 (2001) (concluding that the Superior Court erred in holding that the arresting officer was justified in conducting a traffic stop after observing Gleason's vehicle "cross the berm line by six to eight inches on two occasions for a period of a second or two over a distance of approximately one quarter of a mile").

center line three times in a twenty-five second period, in which both of its driver's side tires consistently remained over the center line. Thus, the record supports an inference that Trooper Beyer observed Appellant's vehicle cross over the center line *at least* four times in a brief period of time. We also observe that Appellant's repeated movement over the center line dividing two lanes of traffic is a more serious safety concern than a vehicle crossing the berm line away from traffic.

As a result, we find the trial court did not err in finding Trooper Beyer had probable cause to stop Appellant's vehicle when Trooper Beyer "observed the vehicle failing to maintain its lane on multiple occasions and stopped the vehicle only after observing repeated violations." Trial Court Opinion, 6/15/18, at 5.

Our precedent shows that our courts have had difficulty analyzing whether the facts of a particular case provide probable cause to conduct a traffic stop based on a violation of Section 3309(1). *See Anderson,* 889 A.2d 596 (outlining the myriad of fact patterns in appeals challenging the validity of vehicle stops based on a suspected Section 3309(1) violation).[6]

---

[6] *But see also Anderson*, 889 A.2d at 604 (Gantman, P.J., dissenting) (noting that "this Court continues to review the numerous fact patterns in traffic stop cases largely by comparing the fact pattern of one case to the fact pattern of another case, which frequently leads to blurry analysis and inconsistent decisions" and suggesting that we should "review the activity alleged in light of the statutes involved, so we can reach more reliable results").

Although we recognize that an individual does not lose all reasonable expectation of privacy in traveling in an automobile, officers must be given a sufficient degree of latitude to further the Commonwealth's interest of enforcing rules and regulations that were designed to promote safety of all who travel on the roads of the Commonwealth. ***See Gleason***, 567 Pa. at 120, 785 A.2d at 988.[7]

For the foregoing reasons, we conclude that the trial court properly denied Appellant's suppression motion and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/19

---

[7] We urge the Legislature to provide further clarification of the offense listed in Section 3309 (as well as for suspected drunk driving) as to when a police officer can make a legal traffic stop. Moreover, the ***Gleason*** decision, which was filed years ago when the only Justice currently on the Supreme Court, Chief Justice Saylor, noted his dissent, should be re-examined in light of the logistical problems it creates for law enforcement.

To require a police officer to count how many times a vehicle is weaving before initiating a vehicle stop can lead to tragic consequences. While there might not appear to be a safety hazard at the precise moment a police officer sees a vehicle being driven erratically, that situation can change in an instant. The current state of the law does not give realistic guidance to law enforcement.