J-S47037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CLAIR EDWIN BARRY, III | : | No. 1948 MDA 2018 |

Appeal from the Order Entered October 30, 2018
in the Court of Common Pleas of Centre County
Criminal Division at No(s):  CP-14-CR-0000637-2018

BEFORE:  DUBOW, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:             **FILED OCTOBER 29, 2019**

The Commonwealth of Pennsylvania appeals from the Order granting the Motion to Suppress filed by Clair Edwin Barry, III ("Barry"), in this driving under the influence of alcohol ("DUI") case.[1]  We affirm.

In its Opinion and Order, the suppression court set forth the relevant factual and procedural history as follows:

> On December 30, 2017[,] at approximately 10:50 p.m., … Barry and Trooper [Christopher] Pifer [("Trooper Pifer")] of the Pennsylvania State Police were both traveling on [State Route] 144 in Bellefonte, Pennsylvania.  There was snow on the ground from a recent snowfall.  [Barry] was driving a pick-up truck.  As the vehicles approached one another[,] headed in opposite

---

[1] The Commonwealth complied with Pa.R.A.P. 311(d), which provides that "[i]n a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d); **Commonwealth v. Petty**, 157 A.3d 953, 954 n.1 (Pa. Super. 2017).

directions of travel, Trooper Pifer observed [Barry's] truck cross the white fog line [by] approximately half [of] the truck['s] width. Observing this transgression, Trooper Pifer turned around to follow [Barry's] vehicle. As he followed [Barry], Trooper Pifer observed [Barry] make a sharp turn onto North Allegheny Street from [State Route] 144, taking the turn wide and crossing the double yellow center line with his left tire as he did so. Trooper Pifer testified that the turn onto Allegheny Street is a very sharp turn, and one he does not often see drivers take. Nevertheless, he believed it is possible to stay fully within the appropriate lane of travel while making the turn. Trooper Pifer acknowledged that he also took the turn wide, crossing the center line, as he followed [Barry] on the evening of December 30, indicating that his attention was focused on following [Barry's] vehicle. There were no other vehicles in or around the intersection at that time.

Shortly after turning onto North Allegheny Street, Trooper Pifer observed [Barry's] vehicle again cross the double yellow center line. Trooper Pifer testified that, on this occasion, [Barry's] vehicle crossed over the line by a few inches. He estimated that this occurred 50 to 100 feet from the curve up ahead in the road. There was no other traffic on the roadway at the time, nor were there pedestrians in the vicinity. The roadway shoulder in that area is relatively narrow.

After seeing [Barry] cross the center line a second time, Trooper Pifer conducted a traffic stop. Further investigation based on the events unfolding during the stop lead [sic] to [Barry's] arrest for [DUI].

Opinion and Order, 10/30/18, at 1-2.

On June 19, 2018, Barry filed a Motion to Suppress, asserting that Trooper Pifer lacked probable cause to perform a vehicle stop. The suppression court conducted a suppression hearing on August 31, 2018, wherein Trooper Pifer testified. By an Opinion and Order entered on October 30, 2018, the suppression court granted Barry's Motion to Suppress. The suppression court concluded that Trooper Pifer lacked probable cause to stop

Barry's vehicle based on Barry's momentary breaches of the center and fog lines on the road. *See id.* at 3-5.

The Commonwealth filed a Motion for Reconsideration on November 2, 2018, arguing that the suppression court relied on an inaccurate representation of the law. On November 28, 2018, before the suppression court ruled on the Motion for Reconsideration, the Commonwealth filed a timely Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

The Commonwealth now presents the following claim for our review: "Whether the suppression court erred in concluding [that] Trooper Pifer did not have probable cause to stop [Barry's] vehicle for a violation of 75 Pa.C.S.A. § 3309(1)?" Commonwealth's Brief at 7.

We are mindful of the following standard of review:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Korn*, 139 A.3d 249, 252-53 (Pa. Super. 2016) (citation omitted).

Trooper Pifer conducted a traffic stop based on a suspected violation of 75 Pa.C.S.A. § 3309(1), which provides as follows:

- 3 -

**§ 3309. Driving on roadways laned for traffic**

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

**(1) Driving within single lane.--**A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S.A. § 3309(1).

In order to conduct a traffic stop based on an observed violation of section 3309(1), a police offer must have probable cause. *Commonwealth v. Cephus*, 208 A.3d 1096, 1099 (Pa. Super. 2019); *see also Commonwealth v. Ibrahim*, 127 A.3d 819, 823 (Pa. Super. 2015) (explaining that "[i]f it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle." (citation omitted)).

To determine whether probable cause exists, we must consider whether the facts and circumstances[,] which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.

*Id.* at 824 (citation and quotation marks omitted). *But see Cephus*, 208 A.3d at 1097 (acknowledging confusion and inconsistency in this Court's decisions analyzing the validity of stops based on violations of section 3309(1)).

The suppression court concluded that Trooper Pifer lacked probable cause to stop Barry's vehicle for a violation of section 3309(1), stating as follows:

[T]he Commonwealth asserts Trooper Pifer had probable cause to believe [Barry] violated section 3309(1) based on three separate incidents. The first incident involved [Barry] crossing the fog line while approaching Trooper Pifer on State Route 144. The testimony established that [Barry] straddled the fog line for a brief period, and that there were no other vehicles on the road at the time. Furthermore, there was no indication that the movement of [Barry's] vehicle was erratic. In this instance, probable cause to believe [Barry] violated section 3309(1) did not exist because there was no evidence that [Barry] created a safety hazard in briefly crossing over the fog line. In the second incident, Trooper Pifer observed [Barry's] vehicle cross over the center line, out of its lane of travel, as [Barry] made a very sharp[,] right-hand turn onto North Allegheny Street. Trooper Pifer testified that he, too, was outside the lane of travel as he made the same turn while following [Barry]. Again, the evidence reflected there was no traffic in the opposing lane of travel, and there was no indication of any sudden or erratic movement by [Barry's] vehicle. As with the first transgression, the [c]ourt finds probable cause to believe a violation of 3309(1) is lacking[,] because there was no evidence that [Barry's] conduct created a safety hazard.

With regard to the third alleged violation, Trooper Pifer testified that [Barry] very briefly crossed the double yellow lines by a few inches[,] with the left-side tires with traveling on North Allegheny Street. There was no vehicular or pedestrian traffic in the vicinity, and [Barry's] vehicle did not obstruct the opposing lane of travel. Although the Commonwealth points to the fact that [Barry] was approaching a hill and a blind curve in the roadway ahead, it does not appear from the evidence, including the video camera evidence presented at the hearing, that these features were so close to the spot [Barry] momentarily breached the center line so as to create a safety hazard in doing so. Accordingly, as with the first two incidents, the [c]ourt determines probable cause was not present based on this third incident.

In sum, looking to each of the incidents allegedly giving rise to probable cause for the stop, … the [c]ourt concludes [that]

Trooper Pifer lacked probable cause to stop [Barry's] vehicle for a violation of section 3309(1).

Opinion and Order, 10/30/18, at 4-5 (internal citations omitted).

We have reviewed the transcripts of the suppression hearing, as well as the dash camera recording, which was admitted into evidence during the hearing.[2] Initially, the dash camera recording does not include footage of Barry's first alleged violation, which prompted Trooper Pifer to make a U-turn and follow Barry's vehicle. *See* N.T., 8/31/18, at 13. Trooper Pifer testified that as he passed Barry's vehicle on State Route 144, he observed the vehicle straddle the white fog line. *See id.* at 7. According to Trooper Pifer, Barry's vehicle remained over the fog line for "a short period of time," before returning to the lane of travel. *Id.* at 17-18; *see also id.* at 18 (agreeing that the duration of the violation was less than a couple of seconds).

Regarding the second alleged violation, our review confirms that although Barry crossed the center line while making a sharp right turn onto North Allegheny Street, he returned to his lane of travel after completing the turn. *See id.* at 8-9 (wherein Trooper Pifer testified that Barry made a wide right turn, crossing the double yellow line into the other lane of traffic). However, nothing in the record indicates that his movement created a safety risk for himself or others, and Trooper Pifer himself left his lane of travel while making the turn. *See id.* at 9, 22 (wherein Trooper Pifer acknowledged that

_____

[2] Trooper Pifer testified that the dash camera automatically starts recording when the patrol car's emergency lights are activated, and includes approximately 40-45 seconds of footage prior to activation. *See* N.T., 8/31/18, at 12.

he left his lane of travel while making the turn behind Barry's vehicle), 23 (wherein Trooper Pifer agreed that the turn would be difficult to navigate in a larger vehicle); *see also id.* at 23 (wherein Trooper Pifer testified that there were no vehicles, pedestrians or cyclists in the opposing lane of travel when Barry made the turn); *Commonwealth v. Cook*, 865 A.2d 869, 874 (Pa. Super. 2004) (stating that "[w]hether an officer possesses probable cause to stop a vehicle for a violation of [] section [3309(1)] depends largely upon [] whether a driver's movement from his lane is done safely.").

Additionally, regarding the third alleged violation, our review confirms that Barry's left tires crossed the center line on North Allegheny Street prior to reaching a turn in the road. *See* N.T. 8/31/18, at 8-9 (wherein Trooper Pifer testified that Barry's tires crossed the center line "in close proximity to the turn"), 25 (stating that Barry was approximately 50 to 100 feet away from the curve when he crossed the center line). However, like the other alleged violations, there is no indication in the record that Barry created a safety risk. *See id.* at 25 (wherein Trooper Pifer acknowledged that there were no vehicles, pedestrians or cyclists in the opposing lane of travel); *see also Cook*, *supra*.

Based upon the foregoing, we conclude that the trial court's findings are supported by the record, and its conclusions are sound. *See Korn*, *supra*. Here, Barry crossed the fog and center lines only briefly. *See Commonwealth v. Enick*, 70 A.3d 843, 847 (Pa. Super. 2013) (stating that the statutory language of section 3309(1), which requires motorists to

maintain a single lane "as nearly as practicable," "does not foreclose minor deviations."). Additionally, the record confirms that Barry's actions did not pose a safety risk to other motorists, and nothing in the record suggests that he was otherwise driving erratically. **See Cook**, **supra**; **cf. id.** at 374-75 (concluding that officer had probable cause to stop defendant for a violation of section 3309(1), where an officer observed defendant "drive over the right fog line to the extent of half the vehicle width, three times, and then rapidly jerk back into his lane of travel[,]" over the distance of one mile, and another officer had previously observed defendant driving erratically); **Cephus**, 208 A.3d at 1099-1100 (concluding that, where officer observed defendant's vehicle at least once before activating his dash camera, and the camera showed defendant's vehicle "drift over the center line three times in a twenty-five second period" and remain consistently over the line, probable cause existed to stop defendant for a section 3309(1) violation).

Based upon the foregoing, we conclude that the suppression court properly concluded that Trooper Pifer lacked probable cause to stop Barry's vehicle for a violation of section 3309(1). We therefore affirm the Order granting Barry's Motion to Suppress.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2019