J-A23015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARTHA ELAINE SCALES | : | |
| | : | |
| Appellant | : | No. 283 MDA 2021 |

Appeal from the Judgment of Sentence Entered January 19, 2021
In the Court of Common Pleas of Adams County
Criminal Division at CP-01-CR-0000220-2020

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:            **FILED: OCTOBER 29, 2021**

Martha Elaine Scales (Appellant) appeals from the judgment of sentence imposed after she was convicted of driving under the influence (DUI) of alcohol and driving on roadways laned for traffic.[1]  Appellant claims the trial court erred in denying her motion to suppress evidence obtained from the stop of her vehicle.  Upon review, we affirm.

The affidavit of probable cause filed by Pennsylvania State Trooper Logan Howell states:

> On 11/09/19 at approximately 0158 hrs., Tpr. Matthew Hochberg and I were on routine patrol in a marked patrol unit traveling east on Baltimore Pike in Gettysburg Borough when we observed a Grey 2009 Lexus 350ES sedan bearing PA registration KWC9311 make an[] exaggerated wide turn while navigating a right hand curve in the roadway on Baltimore Pike.  We continued to follow

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(d)(3) and 3309(1).

the vehicle east on Baltimore Pike, at which point we observed the vehicle cross over the white marked fog line multiple times and fluctuate speeds. We also observed the vehicle to have prohibited window tint. We initiated a traffic stop at Baltimore Pike and White Rd.

Upon initiating the emergency lights the vehicle had a delayed response to the initiation of a traffic stop. The siren was used multiple times to further gain the operator['s] attention. After the vehicle came to a stop, I approached from the driver's side and identified the operator as [Appellant] by her PA driver's license number []. Immediately upon making contact with [Appellant] I detected an odor of alcohol emanating from inside the vehicle. I also detected [Appellant] to have glassy blood shot eyes and slurred speech. [Appellant] related she and her other friends inside the vehicle were traveling from a restaurant where she had dinner and one glass of wine.

At this time I requested [Appellant] exit the vehicle to which she refused. After a brief argument [Appellant] reluctantly exited the vehicle. [Appellant] was directed to the rear of her vehicle. While [Appellant] was walking to the rear of her vehicle I observed her having difficulty walking with balance. Standardized Field Sobriety testing was then administered on [Appellant].

During Field Sobriety Testing [Appellant] showed multiple signs of impairment on the HGN, Walk and Turn, and One Leg Stand tests. Modified Romburg and Lack of Convergence testing was given to which [Appellant] showed no signs of impairment. NMS Lab results are as follows: Ethanol 171 mg/dL, BAC .171 g/100 mL, Amphetamine 19 ng/mL, Delta-9 Carboxy THC 9.9 ng/mL, and Delta-9 THC 1.3 ng/mL.

Affidavit of Probable Cause, 12/5/19, at 1.

The Commonwealth charged Appellant with the above offenses, after which Appellant filed a suppression motion on the basis that Trooper Howell lacked probable cause to stop her vehicle. The court held a hearing on August 27, 2020, and denied the motion on September 1, 2020. The court then held a bench trial and rendered its guilty verdicts. On January 19, 2021, the court

sentenced Appellant to 6 months of probation. She timely appealed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant presents a single issue for our review:

> Whether there was a sufficient quantum of probable cause or reasonable suspicion to conduct a traffic stop of Appellant's vehicle?

Appellant's Brief at 5.

Appellant asserts the traffic stop based on her violation of 75 Pa.C.S.A. § 3309(1) (driving on roadways laned for traffic), and 75 Pa.C.S.A. § 4524(e), (windshield obstructions), was illegal.[2] Appellant argues:

> [Appellant's] vehicle was stopped without probable cause or reasonable suspicion. As such the blood test results that were ultimately obtained as a result of this illegal stop must be suppressed. There was no probable cause or reasonable suspicion to stop Appellant's vehicle based on 75 Pa.C.S. § 3309(1). The dash cam and testimony of Tpr. Howell make it abundantly clear that whatever deviations in maintaining her lane of travel, if any, Appellant committed, they were "minor deviations" and safe. Consequently, no probable cause or reasonable suspicion existed to effect a traffic stop for this conduct.
>
> Secondly, there was no probable cause or reasonable suspicion to stop Appellant's vehicle for alleged violation of illegal window tint. Based on the time of night and distance that Tpr. Howell was from Appellant's vehicle, it was not reasonable for him to suspect Appellant's vehicle was in violation of 75 Pa.C.S. § 4524(e).

Appellant's Brief at 14.

_____

[2] The Commonwealth did not charge Appellant with violating Section 4524(e). *See* Criminal Complaint, 12/5/19, at 1-5. However, Trooper Howell testified that his suspicion that Appellant was violating Section 4524(e) "was one of [the] bases for stopping" Appellant. N.T., 8/27/20, at 10-11.

Our review is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. **Commonwealth v. Smith**, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted).

> Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

**Id.** "[I]t is the sole province of the suppression court to weigh the credibility of witnesses," and "the suppression court judge is entitled to believe all, part or none of the evidence presented." **Commonwealth v. Blasioli**, 685 A.2d 151, 157 (Pa. Super. 1996) (citation omitted). Importantly, our review is limited to the suppression record. **In re L.J.**, 79 A.3d 1073, 1085 (Pa. 2013).

It is well-settled that the "Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." **Commonwealth v. Walls**, 53 A.3d 889, 892 (Pa. Super. 2012). "To secure the right of citizens to be free from [unreasonable] intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify

their interactions with citizens as those interactions become more intrusive."

***Commonwealth v. Pratt***, 930 A.2d 561, 563 (Pa. Super. 2007). We recognize three types of interactions between police and citizens: a mere encounter, an investigative detention, and a custodial detention.

> A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond. An investigatory stop, which subjects a suspect to a stop and a period of detention . . . requires a reasonable suspicion that criminal activity is afoot. A custodial search is an arrest and must be supported by probable cause.

***Commonwealth v. Newsome***, 170 A.3d 1151, 1154 (Pa. Super. 2017) (citation omitted).

With respect to the quantum of cause necessary to conduct a traffic stop, the Pennsylvania Vehicle Code states:

> Whenever a police officer . . . has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

Section 6308(b) requires police have reasonable suspicion for a vehicle stop to gather information necessary to enforce the Vehicle Code. However, police must have probable cause to support a vehicle stop when the detention serves no "investigatory purpose relevant to the suspected [Motor Vehicle

Code] violation." ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa.

Super. 2010) (*en banc*). The Pennsylvania Supreme Court has explained:

> Indeed, the language of § 6308 reflects this very intent. Stops based on reasonable suspicion are allowed for a stated investigatory purpose: "to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title." 75 Pa.C.S. § 6308(b). This is conceptually equivalent to the purpose of a ***Terry***[3] stop. It does not allow all stops to be based on the lower quantum – it merely allows this for investigatory stops, consistent with the requirements of both federal and state constitutions. We interpret the legislature's modification of § 6308 as merely eliminating the statutory requirement of a greater level of information for a stop under the Vehicle Code than is constitutionally required for all other stops.

***Commonwealth v. Chase***, 960 A.2d 108, 116 (Pa. 2008) (footnote added).

"[I]f the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop – if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion." ***Id.*** at 115. Therefore, "when the existence of reasonable suspicion combines with the expectation that the stop will allow light to be shed on the relevant matters, the stop is not unconstitutional." ***Id.***

Here, Trooper Howell stopped Appellant based on his determination that Appellant violated sections 3309(1) and 4524(e) of the Vehicle Code. Section 3309(1) states:

> **(1) Driving within single lane.--**A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be

---

[3] ***Terry v. Ohio***, 392 U.S. 1 (1968).

moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S.A. § 3309(1).

Section 4524(e) provides that no "person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle." 75 Pa.C.S.A. § 4524(e).

Accordingly, Trooper Howell needed probable cause to stop Appellant for violating Section 3309(1), as he could not have possessed a legitimate expectation of learning additional relevant information about Appellant driving within a single lane. *See Feczko*, 10 A.3d at 1292. Trooper Howell also needed probable cause to stop Appellant for driving with illegally tinted windows. *See Commonwealth v. Prizzia*, --- A.3d ----, 2021 WL 3731896, *4 (Pa. Super. Aug. 24, 2021) (police are "required to possess probable cause to conduct [a] traffic stop for [a] section 4524(e)(1) violation.") (footnote omitted).

Appellant's argument that her lane deviations were "minor" and "safe," Appellant's Brief at 14, is belied by the uncontradicted testimony of Trooper Howell at the suppression hearing. Trooper Howell testified he was driving behind Appellant when he observed her vehicle "take an exaggerated wide turn so far that the car entered into the parking spaces" next to the road with the "entirety of the passenger side tires." N.T., 8/27/20, at 6. He opined that had cars been parked in the spaces, Appellant would have hit them. *Id.* at 7.

Trooper Howell testified that he continued to follow Appellant for approximately a mile-and-a-half, and witnessed "multiple roadway violations pertaining to [Appellant] keeping [her] vehicle within a single lane." *Id.* He saw Appellant's vehicle cross the double-yellow center lines, cross the right white fog line, and touch the left turn white fog line. *Id.* at 7, 23-26.

Trooper Howell further testified that the windows of Appellant's vehicle were "tinted to a degree that you are not able to see inside the vehicle from standing outside of it." *Id.* at 10. He stated that he made the observation "within the Borough limits where there [is] nighttime illumination by streetlights." *Id.* at 20.

On this record, the facts support the denial of suppression because Trooper Howell had probable cause to stop Appellant for violating the Vehicle Code. *See Commonwealth v. Cephus*, 208 A.3d 1096, 1099-1100 (Pa. Super. 2019) (finding probable cause where trooper witnessed defendant's vehicle leave the lane of travel four times in a brief period of time); *Commonwealth v. Stultz*, 114 A.3d 865, 883 (Pa. Super. 2015) (probable cause exists "where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed."). The stop of Appellant's vehicle was legal; the trial court properly denied the motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/29/2021