J-A27033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL CHARLES VOGEL | : | |
| | : | |
| Appellant | : | No. 538 EDA 2021 |

Appeal from the Judgment of Sentence Entered February 22, 2021
In the Court of Common Pleas of Lehigh County Criminal Division at No(s):  CP-39-CR-0005309-2019

BEFORE:  PANELLA, P.J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                    **FILED FEBRUARY 8, 2022**

Appellant, Michael Charles Vogel, appeals from the February 22, 2021 Judgment of Sentence entered in the Lehigh County Court of Common Pleas following his conviction of Driving Under the Influence ("DUI").  Appellant challenges the trial court's denial of his pre-trial Motion to Suppress.  After careful review, we reverse.

Following a traffic stop on September 14, 2019, the Commonwealth charged Appellant with two counts of DUI and one count of Failure to Drive within Lane.[1]  Appellant filed an Omnibus Pretrial Motion, including a motion to suppress, contending that the traffic stop that lead to his arrest was illegal.  In particular, Appellant asserted that the arresting officer, Upper

---

[1] 75 Pa.C.S. §§ 3802(a)(2) and 3309(1), respectively.

Macungie Police Officer Philip Shedaker, lacked probable cause to stop Appellant for violating Section 3309(1) of the Motor Vehicle Code because Appellant's diversions from his lane of traffic were only momentary and minor.

The suppression court held a hearing on the motion to suppress at which Officer Shedaker testified. The court also viewed and admitted into evidence the DVD recording produced by the mobile video recording ("MVR") unit on Officer Shedaker's patrol vehicle, which captured footage of Appellant's vehicle prior to and during the traffic stop.[2] Officer Shedaker's testimony and the MVR recording established the following relevant facts.

On September 14, 2019, at approximately 3:21 AM, Appellant was travelling eastbound on Shantz Road in South Whitehall Township. Officer Shedaker was following behind Appellant with his MVR activated. After following Appellant for a short distance, Office Shedaker began narrating his observations of Appellant's conduct noting that "it looks like [Appellant]'s struggling."[3]

_____

[2] The MVR recording from the time Officer Shedaker began following Appellant until he pulled Appellant over is approximately two minutes in duration.

[3] MVR Recording, 9/14/19, at 39 seconds.

As he continued to follow Appellant, Officer Shedaker observed Appellant hit the double yellow line "almost simultaneously"[4] with passing a car travelling in the opposite direction. Then, shortly thereafter, he observed Appellant cross the double yellow line. When Appellant crossed the double yellow line, the MVR recording captured Officer Shedaker state "oh yeah, he crossed over the doubles there."[5]

Approximately, 35 seconds later, Officer Shedaker, still narrating his observations, indicated that he planned to pull Appellant over when there was a wider shoulder on the road. As Officer Shedaker activated his lights to pull Appellant over, he observed Appellant cross over the white fog line with his passenger side tires.[6] Appellant pulled his vehicle over[7] and, after administering field sobriety tests, Officer Shedaker cited him for the above violations of the Motor Vehicle Code.

On cross-examination, Officer Shedaker clarified that Appellant had hit or struck the double yellow line on one occasion and had crossed it once.

---

[4] N.T. Suppression, 6/15/20, at 8, 16.

[5] MVR Recording at 43 seconds.

[6] Officer Shedaker testified that it is not unusual for a driver to touch the fog line when taking that right hand curve.

[7] Officer Shedaker noticed that Appellant's eyes were glassy and his speech slurred. He conducted field sobriety tests and determined that Appellant was unable to safely operate a motor vehicle. Appellant subsequently consented to a blood alcohol test that revealed his blood alcohol level to be at .09%.

Officer Shedaker acknowledged that the driver of the vehicle that passed Appellant did not swerve out of the way, suddenly apply his brakes, or take any other evasive action to avoid being struck by Appellant. In fact, Officer Shedaker agreed that that driver seemed not to have noticed that Appellant was coming anywhere near his vehicle or the lines. Officer Shedaker conceded that Appellant's actions did not pose any danger to the passing vehicle. He also conceded that when Appellant later crossed the double yellow lines Appellant did not present any danger to pedestrians or property.

Officer Shedaker asserted that when he observed Appellant move within his lane and then strike the double yellow line as the other car passed, he had a "little bit of reasonable suspicion to kind of watch" Appellant's conduct.[8] He confirmed that he perceived Appellant's Section 3309(1) violation to have actually occurred when Appellant later crossed over the double yellow lines.[9] Importantly, however, Officer Shedaker agreed that Appellant's conduct constituted "a very minor deviation in

_____

[8] N.T. Suppression at 24.

[9] *Id.* at 23-24. Officer Shedaker later testified that, when he spoke with Appellant immediately after pulling him over, he informed Appellant that he effectuated the traffic stop for the sole reason that Officer Shedaker observed Appellant "go over the double yellow." *Id.* at 28.

driving . . . meaning [he] crossed over very briefly for . . . a second and then [he] came back into his lane."[10]

Following the hearing, the suppression court denied Appellant's motion to suppress. The court found that Appellant's deviation from his lane was not momentary and minor, but instead that Appellant struggled for the entire time Officer Shedaker was following him.[11] It, thus, concluded that Officer Shedaker had probable cause to stop Appellant's vehicle.

Appellant proceeded to a non-jury trial where the court convicted him of one count of DUI. This timely appeal followed. Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) statement. In lieu of filing a Rule 1925(a) opinion, the trial court relied on the suppression court's July 27, 2020 opinion in support of its order denying Appellant's suppression motion.

Appellant raises the following issue on appeal:

> Did the suppression court err when it denied Appellant['s] suppression motion, both because its factual findings were not supported by the suppression record, and because the legal conclusions drawn from the actual facts were incorrect?

Appellant's Brief at 4.

---

[10] ***Id.*** at 25. ***See also id.*** at 31 (where Officer Shedaker agrees that Appellant "crosse[d] over, momentary and minor, meaning one second and then re-corrects in the lane without any issues").

[11] Suppression Ct. Op., 7/27/20, at 5 (unpaginated).

Appellant argues that the trial court erred in denying Appellant's suppression motion because the record did not support the trial court's finding that Appellant had engaged in conduct constituting more than a momentary and minor lane deviation. *Id.* at 11. Appellant also argues that the court erred in concluding that, as a matter of law, Officer Shedaker had probable cause necessary to establish a violation of Section 3309(1) because the record did not establish, and the court did not find, that the manner in which Appellant operated his vehicle created a demonstrable safety hazard. *Id.* at 11-12.

**Standard of Review**

We review the suppression court's denial of a motion to suppress to determine whether the record supports the court's factual findings and whether the legal conclusions drawn from those facts are correct. ***Commonwealth v. Eichinger***, 915 A.2d 1122, 1134 (Pa. 2007). In conducting this review, we consider "only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the [suppression] record as a whole." *Id.* We are bound by the facts as found by the suppression court, so long as they are supported by the record. *Id.* We "may reverse only if the legal conclusions drawn therefrom are in error." *Id.*

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence

presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003) (citation omitted).

Officer Shedaker conducted a traffic stop based on a suspected violation of Section 3309(1), which provides as follows:

**§ 3309.  Driving on roadways laned for traffic**

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

**(1) Driving within single lane.--**A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S. § 3309(1).

In order to conduct a traffic stop based on an observed violation of Section 3309(1), a police offer must have probable cause. ***Commonwealth v. Cephus***, 208 A.3d 1096, 1099 (Pa. Super. 2019); ***see also Commonwealth v. Ibrahim***, 127 A.3d 819, 823 (Pa. Super. 2015) (citation omitted) (explaining that "[i]f it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle.").

To determine whether probable cause exists, we must consider whether the facts and circumstances[,] which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.

*Id.* at 824 (citation and quotation marks omitted). *But see Cephus*, 208 A.3d at 1097 (acknowledging confusion and inconsistency in this Court's decisions analyzing the validity of stops based on violations of Section 3309(1)).

"Whether an officer possesses probable cause to stop a vehicle for a violation of [] [S]ection [3309(1)] depends largely upon whether a driver's movement from his lane is done safely." *Commonwealth v. Cook*, 865 A.2d 869, 874 (Pa. Super. 2004). Moreover, the language of Section 3309(1), which requires motorists to maintain a single lane "as nearly as practicable," "does not foreclose minor deviations." *Commonwealth v. Enick*, 70 A.3d 843, 847 (Pa. Super. 2013).

In support of his claim that Officer Shedaker did not have probable cause to stop him for violation Section 3309(1), Appellant relies on our Supreme Court's decision in *Commonwealth v. Gleason*, 785 A.2d 983 (Pa. 2001), and this Court's decision in *Commonwealth v. Garcia*, 859 A.2d 820 (Pa. Super. 2004). In *Gleason*, a police officer observed the appellant's vehicle cross approximately six to eight inches over the white fog line twice over a quarter mile of road. 785 A.2d at 983, 985. The police officer did not see any other vehicles on the road. *Id.* The *Gleason* Court concluded that the vehicle stop was not supported by probable cause because the record did not establish that the appellant violated Section 3309(1), where there was no evidence that the appellant crossing the white fog line by a few inches "created a safety hazard." *Id.* at 989.

The ***Garcia*** Court considered the facts and applied the holding in ***Gleason***, to conclude, as a matter of law, that "where a vehicle is driven outside the lane of traffic for just a momentary period of time and in a minor manner, a traffic stop is unwarranted." ***Garcia***, 859 A.2d at 823.

Here, Officer Shedaker testified that Appellant did not present a danger to any other vehicles on the road, to pedestrians, or to property. Additionally, Officer Shedaker admitted that Appellant only crossed the double yellow lines for "one second and then re-correct[ed] in the lane without any issues" in a manner that constituted "a very minor deviation in driving." N.T. at 25, 31. Given this testimony establishing the relatively minor nature of the infraction, its brief duration, and that it created no safety hazard, the record does not support the trial court's finding that Appellant's "deviation from his lane of travel was not momentary and minor." Suppression Ct. Op. at 5.

Accordingly, we conclude that the traffic stop giving rise to Appellant's arrest was not supported by probable cause and the trial court erred as a matter of law in denying Appellant's motion to suppress.

Judgment of Sentence vacated. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/2022