J-A11022-20

2020 PA Super 209

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                     :            PENNSYLVANIA
                                     :

            v.                          :
                                     :

EDWARD JAMES SMITH           :
                                     :

          Appellant         :      No. 1098 MDA 2019

Appeal from the Judgment of Sentence Entered April 12, 2019
In the Court of Common Pleas of Snyder County Criminal Division at
No(s):  CP-55-CR-0000398-2017

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY McLAUGHLIN, J.:              **FILED AUGUST 27, 2020**

      Edward James Smith appeals from the judgment of sentence entered following his conviction for Driving Under the Influence of Alcohol ("DUI"),[1] Driving Vehicle at Safe Speed,[2] and related summary traffic offenses.[3] Smith argues the court erred in denying his motion to suppress. We affirm.

      On July 2, 2017, Pennsylvania State Trooper Jared S. Mowen pulled over Smith's vehicle. Upon questioning Smith, Trooper Mowen noted clear signs of intoxication. Smith admitted to consuming five to six beers prior to driving. Trooper Mowen arrested him, and the Commonwealth charged him with the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(a)(1).

[2] 75 Pa.C.S.A. § 3361.

[3] Smith was convicted of Careless Driving and Vehicular Hazard Signal Lamps. **See** 75 Pa.C.S.A. §§ 3714(a), and 4305(a), respectively.

above offenses. Smith moved to suppress the evidence on the basis that the trooper lacked probable cause to stop his vehicle. The Commonwealth argued that Trooper Mowen had had probable cause to believe Smith had violated Section 3361 of the Motor Vehicle Code, "Driving Vehicle at Safe Speed." *See* 75 Pa.C.S.A. § 3361. The court held a hearing on the motion, and the testimony presented was as follows.

Trooper Mowen testified that at 1:30 a.m., after leaving a DUI checkpoint, he was driving on patrol on the New Berlin Highway. He described the road as "a country two-lane highway, [with] lots of intersections. It's windy, curvy, hilly, your typical country road out in the middle of nowhere." N.T., 6/18/18, at 4. Trooper Mowen testified that there were houses alongside the road, but no sidewalks. There was no rain or snow on the ground.

Trooper Mowen stated he saw Smith's SUV drive past him, going in the opposite direction, "at a high rate of speed." *Id.* at 6. He saw the vehicle "for maybe a second or two." *Id.* at 11. There was no other traffic in sight. Trooper Mowen testified that the speed limit was 45 or 50 miles per hour, and he estimated Smith's speed to have been 70 to 75 miles per hour.

When asked how he was able to estimate the speed of Smith's vehicle, Trooper Mowen stated he based this estimate on his "training and experience running radar and doing several other patrols." *Id.* at 6. Trooper Mowen testified that in his five years as a Trooper, there have been approximately a thousand times that he has sat in a location and "run radar" for an hour or

more. ***Id.*** at 6, 7. He stated that part of his job involves identifying fast-moving vehicles in order to determine which ones "to hit with the gun":

> Our policy is when we're looking at traffic, you're looking for the speeders, the vehicles that are going at a high rate of speed and you're to click your radar on that car to get their estimated speed. We are not running speed on every single car that comes by. You're looking for a car that sticks out of other traffic that is moving at a high rate of speed.

***Id.*** at 6-7. Once he identifies a fast-moving vehicle, Trooper Mowen uses a radar gun to measure its speed.

Trooper Mowen believed the speed Smith was driving was unreasonable, and turned his car around to pursue Smith. He also believed Smith was DUI, explaining, "Due to my training and experience and many DUI arrests, speed is a significant factor in people that are under the influence behind a wheel." ***Id.*** at 15-16. He testified that, by using "excessive speed," he caught up with Smith after a mile or a mile and a half. ***Id.*** at 14. Trooper Mowen stated that while he was doing so, he did not see Smith swerve from his lane, but by the time he was close enough to observe Smith's driving further, he had turned on his traffic lights and stopped Smith's vehicle.

The court denied Smith's suppression motion, finding there was probable cause to initiate the stop. After a bench trial, the court found Smith guilty of the charged offenses. The court sentenced Smith to serve five days to six months' imprisonment, plus fines and costs, and to participate in a safe driving program.

Smith appealed, raising the sole issue of whether Trooper Mowen had probable cause to stop his vehicle. Smith argues that the record does not support a finding of probable cause because Trooper Mowen did not articulate surrounding conditions or circumstances that would have made Smith's speed unreasonable or unsafe. Smith contends that there were no adverse weather conditions, and the area was rural and scarcely populated. He adds that there was "no other traffic, no pedestrians, no intersections, and no stop signs in the area," and "no testimony regarding any specific sharp curves or hill crests in the area." Smith's Br. at 9.

Smith also argues that Trooper Mowen should have followed Smith for a while, in order to gauge Smith's speed more accurately, and that Trooper Mowen's estimate of Smith's speed when passing by him was unreliable "due to difficulty in judging the speed of objects approaching." *Id.* at 18. Smith relies on *Commonwealth v. McCandless*, 648 A.2d 309 (Pa. 1994), which Smith argues held that an officer's observation of high speed in relation to other vehicles, alone, does not supply probable cause of unsafe driving.

Our standard of review of the denial of a suppression motion requires us to determine whether the record supports the trial court's factual findings and legal conclusions. *Commonwealth v. Knox*, 219 A.3d 186, 193 (Pa.Super. 2019), *appeal denied*, 228 A.3d 256 (Pa. 2020). Where, as here, the Commonwealth prevailed on the suppression motion, we consider only the Commonwealth's evidence and "so much of the evidence for the defense as remains uncontradicted when read in context of the record as a whole." *Id.*

- 4 -

(quoting ***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010)). We reverse only where the record does not support the trial court's factual findings, or the court's legal conclusions are erroneous. ***Id.***

The parties agree that Trooper Mowen was required to have probable cause before stopping Smith's vehicle for a violation of Section 3361 of the Motor Vehicle Code, Driving Vehicle at Safe Speed, because the stop would not enable the trooper to learn anything more about whether Smith was driving at an unsafe speed. ***See Commonwealth v. Feczko***, 10 A.3d 1285, 1291 & 1291, n.2 (Pa.Super. 2010) (*en banc*). "Probable cause exists where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." ***Commonwealth v. Gibson***, 638 A.2d 203, 206 (Pa. 1994). It is a less demanding standard than the trial standard of beyond a reasonable doubt. ***Commonwealth v. Evans***, 661 A.2d 881, 885 (Pa.Super. 1995).

Section 3361 states,

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S.A. § 3361.

As we stated in **Commonwealth v. Heberling**, 678 A.2d 794 (Pa.Super. 1996), Section 3361 is based on the "common sense recognition that many driving situations require extra care." **Id.** at 796. A driver's speed in relation to the speed limit is not dispositive of a violation under this section. **Id.** at 795. Rather, a violation depends on the speed in relation to the "conditions" and "actual and potential hazards" of the roadway. **Id.** Such conditions and hazards include, but are not limited to, "the amount of traffic, pedestrian travel and weather conditions, but also the nature of the roadway itself (e.g., whether four-lane, interstate, or rural; flat and wide, or narrow and winding over hilly terrain; smooth-surfaced, or full of potholes; clear, or under construction with abrupt lane shifts)." **Id.** at 795-96.

Thus, in **Heberling**, we affirmed a conviction under Section 3361 based on a police officer's testimony that the defendant was driving at an extreme rate of speed while approaching an intersection on the crest of a hill, even though there was no other traffic or pedestrians, and weather conditions were clear. **Id.** at 797.

We find additional guidance in our decision in **Commonwealth v. Minnich**, 874 A.2d 1234 (Pa.Super. 2005). There, we found probable cause to effect a stop for a violation of Section 3361, even though the police officer had only estimated the defendant's speed and there was no other traffic in the area. We explained that despite the absence of such factors, the officer's testimony that he had observed the defendant driving at a high rate of speed

on an icy road, going around a "blind" curve as it approached the crest of a hill, at a point where the wind was blowing dust and cinders, was enough to demonstrate probable cause. ***Id.*** at 1237, 1239.

Here, Trooper Mowen testified that he estimated Smith to be driving upwards of 70 miles per hour in an area where the limit was 45 or 50 miles per hour, and that his estimate was informed by his extensive experience using radar, and confirmed by the speed and distance required to catch up to Smith. Trooper Mowen testified that Smith's speed was unreasonable given the specific conditions of the road, being that it was a "windy, curvy, hilly" road, with "lots of intersections" and with houses alongside of it. N.T. at 4. This evidence was uncontradicted, and accepted by the trial court. We conclude that the record supports the conclusion that Trooper Mowen had probable cause to stop Smith for violating Section 3361.

Smith's reliance on ***McCandless*** is misplaced. In that case, the question was whether a police officer had probable cause of a violation of Section 3361 in order to support the officer's pursuit of the defendant into a different jurisdiction. 648 A.2d at 311. Our Supreme Court held that probable cause was lacking where the police officer based his belief only upon on his observation that the defendant's vehicle was moving faster than other vehicles he had observed that night. ***Id.*** Moreover, the officer was unable to estimate the defendant's speed, and "testified that he initially had only a reasonable suspicion that the vehicle was speeding, and that he decided to follow it to determine whether, in fact, it was speeding." ***Id.*** Here, Trooper Mowen

testified as to an estimate of Smith's speed, his basis for that estimate, and the conditions of the road that made driving at such a speed unreasonable and unsafe. These facts supplied probable cause of a violation.

As we find no merit to Smith's suppression issue, we affirm his judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/27/2020