J-S29040-23

2023 PA Super 228

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TERRY ALLEN PATTERSON :
:
Appellant : No. 376 MDA 2023

Appeal from the Judgment of Sentence Entered February 6, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0004889-2021

BEFORE: MURRAY, J., KING, J., and COLINS, J.[*]

OPINION BY COLINS, J.: **FILED: NOVEMBER 7, 2023**

Appellant, Terry Allen Patterson, appeals from the judgments of
sentence imposed by the Court of Common Pleas of Lancaster County after it
found him guilty of possessing a controlled substance with intent to deliver,
knowingly possessing a controlled substance, driving under the influence
(DUI), and of violating the Motor Vehicle Code prohibition against driving with
a suspended license for a prior DUI.[1] The sole issue on appeal is the trial
court's ruling that the initial seizure was lawful under the public servant

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30); 35 P.S. § 780-113(a)(16); 75 Pa.C.S. §
3802(d)(2); and 75 Pa.C.S. § 1543(b)(1)(i), respectively.

exception to the warrant requirement where appellant's car partially blocked the left lane of a limited access highway. After careful review, we affirm.

The suppression hearing was held on June 13, 2022, with a single witness, Sergeant Adam Shope, a nine-year veteran of the Northwest Regional Police Department with specialized training and ample experience in recognizing when motorists are DUI. Trial Court Opinion, 2. In its written opinion, the trial court summarized its factual findings with respect to the initial stop as follows:

> At approximately 8:18 p.m. on November 15, 2021, Sergeant Shope was on patrol traveling eastbound on Route 283 when he observed vehicles in the left lane merging into the right lane to avoid a vehicle stopped on the left shoulder of the highway. Sergeant Shope observed a white Nissan Rogue parked on the left shoulder of Route 283 East, at mile marker 16.8 (referred to as the "Snyder's Road overpass" at the evidentiary hearing and in memoranda), in a sixty-five miles-per-hour speed limited zone. The Nissan was parked with its left tires near the edge of the highway's asphalt abutting the grass median and with its right tires well into the left lane of Route 283 East, blocking a significant portion of the lane. In response, Sergeant Shope activated his emergency lights, pulled up behind the vehicle, exited his vehicle, and approached the driver. Sergeant Shope both attested and testified that the basis for his initiating contact with the Defendant was to ascertain the Defendant's well-being and render any necessary aid.

Trial Court Opinion, 2 (footnote omitted).

The Sergeant was not sure whether the car was disabled or why it was otherwise stopped in traffic. N.T. Suppression 6/13/23, 6, 35. Notably, he activated his emergency lights for both the safety of the stopped car and himself. *Id.* at 6-7. The trial court's finding that the car blocked "a significant

portion" of the left travel lane was fully supported by the video evidence introduced at the suppression hearing:



Exhibit CW#1, In-Car-Video (Front): time 1:10.

Immediately upon speaking with Appellant, who was in the driver's seat alone in the car, Sergeant Shope recognized the blank stare, confusion, disorientation, and sluggish movements of a person under the influence. Appellant was unable to answer simple questions, including why he had parked the car as he had. Sergeant Shope directed him to exit and stand by the front of the patrol car. The officer ran Appellant's information, and learned he was driving with a suspended license from a prior DUI. While continuing to speak with him, Sergeant Shope made additional observations that supported his belief Appellant was operating the car while impaired. A second officer arrived at the scene, and saw a wet cigarette inside the car, which he

recognized to be consistent with the use of phencyclidine (PCP). Upon a search of Appellant incident to arrest, Sergeant Shope discovered a large amount of cash and a baggie containing 11 separate packets of crack cocaine and another baggie of cocaine powder. A subsequent blood test revealed there was PCP in Appellant's system. Trial Court Opinion, 3-4.

Appellant moved to suppress the physical evidence recovered. He specifically alleged that the initial detention, when the officer pulled in behind his stopped car with emergency lights activated, was without reasonable suspicion or probable cause. In addition to Sergeant Shope's testimony, video evidence from the patrol car and body cameras was introduced at the suppression hearing. At the conclusion of the hearing, the court granted Appellant's request to file a brief. On November 2, 2022, the court denied suppression, and listed the matter for trial.

The trial court filed its opinion addressing the suppression claim pursuant to Pa.R.Crim.P. 581(I) on November 7, 2022. It held that Sergeant Shope initiated a detention when he pulled his patrol car behind Appellant's parked car on the highway with the emergency lights activated. It agreed with appellant that Sergeant Shope neither had probable cause of a Motor Vehicle Code violation nor reasonable suspicion of criminal activity at that point in time. Trial Court Opinion, 7.[2] Nonetheless, the court ruled that under the

---

[2] The trial court declined to consider whether Sergeant Shope had probable cause of a violation of the Motor Vehicle Code prohibition on standing or

*(Footnote Continued Next Page)*

public servant exception of the community caretaking doctrine the seizure was lawful. Relying on **Commonwealth v. Livingstone**, 174 A.3d 609 (Pa. 2017), the trial court held that "Sergeant Shope was able to articulate specific objective facts that reasonably suggested his assistance was needed to mitigate peril." Trial Court Opinion, 11.

On February 6, 2023, after a colloquy, Appellant waived a jury trial. The bench trial was conducted by the same judge who ruled on the suppression

_____

parking a car on "a limited access highway unless authorized by official traffic-control devices." 75 Pa.C.S. § 3353(a)(2)(vii). It ruled that the Commonwealth's reliance on a violation of that section was an "after-the-fact justification […] for the stop rather than its genesis." Trial Court Opinion, 7. Because we have determined that the stop was lawful under the public servant exception of the community caretaking doctrine, we will not address the Commonwealth's argument that probable cause for a Motor Vehicle Code violation also existed at the moment of seizure (**see** Brief for Appellee, 15-18). We note that, in general, probable cause exists where the totality of the circumstances shows that "the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." **Commonwealth v. Simmen**, 58 A.3d 811, 817 (Pa. Super. 2012). The officer's subjective intent "play[s] no role in ordinary, probable-cause Fourth Amendment analysis." **Whren v. United States**, 517 U.S. 806, 813 (1996). All that matters is that the officer's conduct was objectively reasonable, *i.e.*, a reasonable person in the officer's position would have believed that he had probable cause. **Id**. "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." **Scott v. United States**, 436 U.S. 128, 138 (1978).

motion. Trial was based on stipulated facts supported by documentary evidence and incorporated suppression hearing testimony. The trial court found defendant guilty of the four counts charged. Appellant waived a presentence investigation and proceeded immediately to sentencing. The court imposed an aggregate term of two to six years' imprisonment.[3]

Appellant filed a timely appeal.[4] In his Rule 1925(b) Statement, he asserted it was error to deny suppression, "where the stop and seizure of [Appellant's] vehicle was not justified under the public servant exception to the warrant requirement in violation of the Fourth Amendment of the Federal Constitution and Article 1, Section 8 of the Pennsylvania Constitution, and therefore, any contraband or items found on his person, property or in the vehicle searched should have been suppressed as the fruit of the illegal seizure." Appellant's Rule 1925(b) Statement. The trial court issued an order on April 3, 2023, specifically relying on its previously filed opinion in response to Appellant's claim.

On appeal from an order denying a motion to suppress, we apply the following standard of review:

---

[3] The trial court also terminated probation under a separate docket number. *See* CP-36-CR-0006650-2019.

[4] The notice of appeal contained a typographical error noting two dates (one of which was correct) for the judgement of sentence. The caption of the appeal reflects that it is taken from the February 6, 2023 judgment of sentence. *See* *Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (correcting caption when appellant misstates where appeal lies).

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by those findings and may reverse only if the [suppression] court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on the allegations of legal error, the suppression court's legal conclusions are not binding on the appellate court, 'whose duty it is to determine if the suppression court properly applied the law to the facts.' Thus, the conclusions of law of the [suppression court] are subject to our plenary review.

*Commonwealth v. Kemp*, 195 A.3d 269, 275 (Pa. Super. 2018) (*quoting Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)).

At the suppression hearing, Appellant challenged only the "stop and detention" that initiated the confrontation between him and Sergeant Shope, and declined to otherwise contest the officer's conduct during the traffic stop or the probable cause for arrest. N.T. Suppression 6/13/22, 3-4, 12-13. The trial court recognized in its opinion that Appellant's suppression claims "focus solely on his initial stop and detention." Trial Court Opinion, 4. And, in his brief, Appellant challenged only the trial court's application of the public servant exception to the warrant requirement for the initial stop and detention. Brief for Appellant, 4. We will, therefore, limit our analysis to the lawfulness of the initial seizure.

There was no dispute at the suppression hearing that Sergeant Shope seized Appellant when he initiated an investigative detention by pulling in

behind the stopped car with the emergency lights activated. Indeed, the Pennsylvania Supreme Court stated that "a reasonable person, innocent of any crime, would … interpret the activation of emergency lights on a police vehicle as a signal that he or she is not free to leave." *Livingstone*, 174 A.3d at 621. It held that even when the citizen's car was already parked on the shoulder of a highway, the "Appellant was seized and subjected to an investigative detention." *Id.* At 625; *see also Commonwealth v. Gindraw*, 297 A.3d 848, 851 (Pa. Super. 2023).

The question, therefore, is whether the public servant exception of the community caretaking doctrine justified that seizure. The Pennsylvania Supreme Court explained that the community caretaking doctrine:

> … has been characterized as encompassing three specific exceptions [to the warrant requirement]: the emergency aid exception, the automobile/inventory exception, and the public servant exception, also sometimes referred to as the public safety exception.

*Livingstone*, 174 A.3d at 626-627; *see also Gindraw*, 297 A.3d at 851. "Each of the exceptions contemplates that the police officer's actions be motivated by a desire to render aid or assistance, rather than the investigation of criminal activity." *Livingstone*, 174 A.3d at 627.

With respect to the public servant exception under Pennsylvania law, the *Livingstone* Court recognized that "the role of police is not limited to the detection, investigation, and prevention of criminal activity," in that "officers engage in a myriad of activities that ensure the safety and welfare of our

Commonwealth's citizens." **Livingstone**, 174 A.3d at 629; **see also Commonwealth v. Wilmer**, 194 A.3d 564, 569 (Pa. 2018) (noting the "wide variety" of community caretaking "laudable endeavors" expected of police officers relating to the health and safety of the citizenry in applying the emergency aid exception).

In recognition of the many different tasks assigned to police officers, the **Livingstone** Court adopted a test of "reasonableness" to evaluate the officer's motivation under the exception, because "it is not realistic or wise to expect an officer to ignore the nature of his or her role in law enforcement—or its inherent dangers—in order for the public servant exception … to apply." **Livingstone,** 174 A.3d at 637.

> Thus, so long as a police officer is able to point to specific, objective, and articulable facts which, standing alone reasonably would suggest that his assistance is necessary, a coinciding subjective law enforcement concern by the officer will not negate the validity of that search under the public servant exception.

**Id.**; **see also Gindraw**, 297 A.3d at 853 ("**Livingstone** specifically rejected that … an investigation must be 'totally divorced' from the detection of criminal activity").

The Court set forth a three-element test for determining when the public servant exception to the warrant requirement under the community caretaking doctrine may properly be invoked:

> the officer must point to specific, objective, and articulable facts which would reasonably suggest to an experienced officer that assistance was needed; the police action must be independent from the detection, investigation, and acquisition of criminal

evidence; and, based on a consideration of the surrounding circumstances, the action taken by police must be tailored to **rendering assistance or mitigating the peril**. Once assistance has been provided or the peril mitigated, further police action will be evaluated under traditional Fourth Amendment jurisprudence.

*Livingstone,* 174 A.3d at 637 (emphasis supplied).

The trial court applied *Livingstone* to the facts of this case and found that all three elements were satisfied. First, it held that the officer "was able to articulate specific and objective facts that reasonably suggested his assistance was needed to mitigate peril" because "essentially half" of Appellant's car was parked "in the left lane of a limited access highway," thereby putting Appellant "at risk of injury or death from a rear end collision." Trial Court Opinion, 11. The court noted further that the officer's observation of several cars being "forced to change lanes in order to avoid such a collision" with Appellant's car supported the officer's intervention to minimize the peril presented. *Id*. Second, it found that the officer's "actions were independent from detection, investigation, and acquisition of criminal evidence," based on the officer's written reports and credited testimony that his "sole objective in initiating the traffic stop was to check on the well-being of the occupant, who was not visible to him until making contact." *Id*. Third, the court found that the "only reasonable and narrowly tailored means available to Sergeant Shope to render assistance and mitigate peril was to initiate a traffic stop with his emergency lights activated to ward off other drivers." *Id*. (distinguishing this case from the facts presented in *Livingstone*).

Appellant argues on appeal only that the trial court's finding with respect to the first element of the *Livingstone* test was erroneous. He contends that the fact that his car "was partially in the left lane of travel of the two[-]lane road was *not* sufficient by itself to justify the seizure." Brief for Appellant, 18 (emphasis in original). According to Appellant, in light of the officer's stated aim to check "on the welfare of the motorist when he pulled in behind [Appellant's car,]" the officer "was unable to articulate thereafter any specific and objective facts what would reasonably suggest that [Appellant] was in need of assistance at the time of the seizure." Brief for Appellant, 17.

We have no difficulty concluding, as did the trial court, that any reasonable officer would believe her assistance is needed upon finding a car stopped and blocking the left travel lane of a high-speed portion of a limited access highway. These are "specific and articulable facts which, **viewed objectively and independent of any law enforcement concerns**" fully support the public servant exception. *Livingstone*, 174 A.3d at 636 (emphasis supplied). Indeed, absent extraordinary reasons, it would have been a dereliction of duty for a police officer to ignore such an apparent and immediate safety hazard on a highway. It also was reasonable to assume that either the car or motorist was in distress from the fact that the car was stopped in such a precarious position.

Appellant's argument focuses exclusively on **his** own supposed need for caretaking. It skips over what is obvious. The stopped car, fully half of which was in the left lane of a highway in a 65 mile-per-hour speed zone and blocking

a "significant portion" (at least a third) of that lane, thereby forcing other cars to move from the left to the right lane to avoid a collision, was the peril the officer needed to address. That peril, and the risk of serious accident and injury presented, was to the other motorists on the highway as much as it was to the motorist of the stopped car. By pulling in behind the car stopped in the driving lane of the highway and activating his emergency lights for the "safety" of the stopped car and himself "because [they] were pretty much blocking the left lane of travel," N.T. Suppression, 6/13/22, 6-7, the officer manifested his duty to "ensure the safety and welfare of our Commonwealth's citizens." *Livingstone*, 174 A.3d at 629; *see also Gindraw*, 297 A.3d at 849 (noting that, even where the stopped car is "legally parked on the shoulder of the roadway," the activation of emergency lights serves the purpose of "providing greater visibility to both the Troopers and the vehicle they were pulling behind … [and] also signal to other vehicles in the surrounding area to either slow down or move over").

This concern for the safety of other motorists on a highway, in addition to the motorist of the stopped car, is encompassed within the community caretaking doctrine. *See Cady v. Dombrowski*, 413 U.S. 433, 447-448 (1973) (adopting community caretaking doctrine and ruling that police "concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk" of a car that had been in single car accident warranted entry into the trunk); *State v. McCormick*, 494 S.W.3d 673, 687 (Tenn. 2016) (quoted in *Livingstone*: community

caretaking encompasses "the possibility of a person in need of assistance or the existence of a potential threat to public safety"); ***Ullom v. Miller***, 705 S.E.2d 111, 121 (W.Va. 2010) (cited in ***Livingstone***: community caretaking "encompasses a non-investigatory, non-criminal role of police officers to help to ensure the safety and welfare of our citizens"); ***Williams v. State***, 962 A.2d 210, 217 (Del. 2008) (cited in ***Livingstone***: community caretaking doctrine "permits police officers to investigate situations in which a citizen may be in peril").

Appellant relies on the particular circumstances of ***Livingstone*** and an unpublished memorandum of this Court to provide a laundry list of factors not present here, which he argues undermines the trial court's conclusion there was a need for action by the officer: no inclement weather; no signs of accident; no indication that the car was not parked as close as practicable to the grass of the median; no hazard lights activated; and no calls or complaints about a car in need of assistance or "disrupting the flow of traffic." Brief for Appellant, 17-18. Appellant's argument challenges only the weight given by the trial court to salient factors. ***Gindraw***, 297 A.3d at 852; ***see also Commonwealth v. Vaughn***, 2021 WL 3702577, *5 (Pa. Super. 2021) (non-precedential decision) ("The crux of Appellant's argument . . . that there were no objective facts indicating she was in need of assistance . . . goes to the weight of the evidence presented"). As such, it is contrary to the standard of review obligating this Court to consider only the Commonwealth's evidence and so much of the defense evidence that remains uncontradicted.

*Livingstone*, 174 A.3d at 619. "[I]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony." *Commonwealth v. Carmenates*, 266 A.3d 1117, 1123 & 1126 (Pa. Super. 2021) (*en banc*) (deferring to suppression court's weighing of testimony given on direct- and cross-examination).

In *Livingstone*, the Supreme Court found the circumstances presented were insufficient to warrant an intrusion under the public servant exception: a car "pulled over onto the right shoulder of the road; the engine running, but hazard lights not activated" on an interstate highway. *Livingstone*, 174 A.3d at 614. Although not stated by the Court, it is a fair inference that the car "pulled over onto the right shoulder" was not blocking traffic. These observations by the state trooper did not rise to "specific and objective facts that would reasonably suggest that Appellant needed assistance." *Id*. at 638. Similarly, we have ruled that a trooper's observation of a car "legally parked on the shoulder" where "the driver appeared to be looking at her phone or digging through her purse and was slumped over towards the passenger seat" was insufficient to warrant an intrusion. *Commonwealth v. Savino*, 2021 WL 4171450, *1 & *6 (Pa. Super. 2021) (non-precedential decision). In both cases, the cars were safely stopped on the side of a highway, engine running – indicating the stop could be temporary – and with no other sign of distress. In direct contrast, Appellant's car was not safely stopped, and, instead, was blocking a significant portion of the left lane of a highway in a 65 mile-per-

hour zone. The salient factor here, not present in either *Livingstone* or *Savino*, was that the stopped car presented a real hazard to other drivers.

As the Supreme Court observed:

there are many reasons why a driver might pull to the side of a highway: the driver may need to look at a map, answer or make a telephone call, send a text message, pick something up off the floor, clean up a spill, locate something in her purse or in his wallet, retrieve something from the glove compartment, attend to someone in the back seat, or, . . . enter an address into the vehicle's navigation system.

*Livingstone*, 174 A.3d at 634-35 (footnote omitted). We agree that "pulling to the side of the road to perform any of these activities is encouraged, as a momentary distraction while driving may result in catastrophic consequences," when the car is safely pulled over and out of the way of traffic. *Id*. However, we can think of no reason, and Appellant has offered none, that should give a reasonable officer a moment's hesitation to stop and investigate why this car was blocking the left travel lane.

By weighing the testimony elicited on cross-examination in isolation of the totality of the circumstances, Appellant's argument both violates the standard of review and fails to give **any** weight to the peril presented by his stopped car. Certainly, there is nothing in *Livingstone* that **requires** the existence of activated hazard lights, inclement weather or the like to warrant an intrusion under the public servant exception. The question to be answered is not whether specific circumstances were present but whether the officer can "point to specific, objective, and articulable facts that would reasonably

suggest to an experienced officer that a citizen is in need of assistance." *Livingstone*, 174 A.3d at 634. Rote reliance on a check list would undermine the Supreme Court's stated belief that "[r]equiring an officer to articulate specific and objective facts … will cabin reliance on the exception and enable courts to properly assess its employment." *Livingstone*, 174 A.3d at 635. As the Supreme Court recognized the public servant exception could arise in a "myriad of [police] activities" and not just those limited to a few factors. *Id*. at 629.

Examining the specific factors cited by Appellant, moreover, demonstrates that each must be reviewed within the totality of the circumstances to be properly weighed. For example, Appellant cites the lack of calls or complaints about a car disrupting traffic. But no calls were needed for the officer to reasonably assess the situation here, because he personally saw that the stopped car was "disrupting the flow of traffic" from the fact that several cars had to move from the left lane to the right to safely pass by it. The presence of inclement weather may be significant in certain situations, particularly where an officer's concern includes the possibility of a **prior** accident or of a motorist seeking help by wandering away from the car, but, here, the officer's reasonable concern was directed at a **future** accident. Inclement weather might make that concern even greater, but the lack of it did not render the situation safe.

We agree that activated hazard lights in many circumstances would support an officer's belief that a citizen required assistance (and likely

welcomed it). **See Gindraw**, 297 A.3d at 853 ("the presence of Gindraw's vehicle on the side of the road after midnight in a dark area with its hazard lights flashing provided the experienced trooper with specific, objective, and articulable facts to suggest he might require assistance"). The absence of activated hazard lights should not automatically preclude application of the public servant exception where other signs of distress are present. Similarly, the fact that Appellant's car was stopped on a narrow shoulder, seemingly parallel to, and "as close as possible to the median," Brief for Appellant, 18, might indicate that the motorist possessed all of his faculties when he stopped his car on a highway, but certainly was outweighed (and undermined) by the fact that the car "was blocking a significant portion of" the driving lane. Trial Court Opinion, 2.

We therefore agree with the trial court that Sergeant Shope "was able to articulate specific and objective facts that reasonably suggested his assistance was needed to mitigate peril." Trial Court Opinion, 11. The record amply supports the trial court's finding that the first element of the **Livingstone** test for the public servant exception was satisfied.

Appellant has not challenged the trial court's rulings with respect to the remaining two elements. Nonetheless, we have reviewed the record and find the trial court's rulings are supported by the record evidence at the suppression hearing. As Sergeant Shope testified, and the trial court found, his actions were motivated by concern for the motorist and the peril presented by the stopped car blocking the travel lane, which "were independent from

detection, investigation, and acquisition of criminal evidence" and "would have been a dereliction of duty" for him to ignore. Trial Court Opinion, 11. Finally, Sergeant Shope's interaction with Appellant constituted a minimal intrusion, as it was limited to an approach to the driver's side window to inquire on Appellant's reasons for having parked the car as he had.[5] There was no show of force by the officer, and the initial confrontation was brief, approximately a minute, and a proper way to confirm whether assistance was needed to move the car out of the way of traffic. Trial Court Opinion, 11. This level of interaction was "commensurate with the perceived need for assistance." *Livingstone*, 174 A.3d at 637; *Gindraw*, 297 A.3d at 854 (where car was stopped on shoulder of road and not blocking travel, the "intrusion was minimal" because it was short and not conducted for the purpose of detecting crime).

Appellant did not contest that the officer acquired reasonable suspicion and then probable cause of DUI after the initial confrontation. *See* *Livingstone*, 174 A.3d at 637 ("Once assistance has been provided or the peril mitigated, further police action will be evaluated under traditional Fourth Amendment jurisprudence"). Accordingly, we affirm the order denying

---

[5] Sergeant Shope testified that when he first made contact with Appellant, he tried "to ask some information about his trip, what was going on, things like that. [Appellant] was very dazed and confused, seemed very disoriented. I had a very tough time getting simple answers from him." N.T. Suppression 6/13/22, 8-9. Appellant did not provide an answer to the officer's inquiries with respect to his welfare or why he had stopped his car "where he did" and his movements were "very sluggish." Officer Shope believed at that time that Appellant "was showing clues of impairment." *Id.*, 9.

suppression of physical evidence following Sergeant Shope's investigative detention of Appellant.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/7/2023