J-S04038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER LOGAN ROBINSON | : | |
| | : | |
| Appellant | : | No. 1649 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 23, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0000457-2023

BEFORE:  OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 25, 2025**

Appellant, Christopher Logan Robinson, appeals from the judgment of sentence following his conviction of driving under the influence ("DUI") at a stipulated bench trial.[1] He challenges the suppression court's ruling that the car stop was lawful. After careful review, we affirm.

On October 8, 2022, at about 10 p.m., Trooper Connor Kirkegard was on patrol in a marked car on U.S. Route 1 northbound in Oxford Township, Chester County. The trooper was travelling approximately 65 miles per hour ("mph") in the left lane of a two-lane highway marked as a 55-mph zone. The only illumination of the road came from the headlights of cars travelling southbound. N.T. Suppression Hearing, 7/5/23, 4-8, 15.

---

*Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(a)(1).

The trooper passed a car in the right lane moving markedly slower. About eight seconds later, the patrol car began to climb a long upward slope, beyond the top of which the road was not visible at all. Twelve seconds later, a red Mini Cooper passed the marked patrol car on the right. The trooper estimated the Mini Cooper was passing at approximately 70 to 75 mph. N.T. Suppression Hearing, 7/5/23, 4-8, 17; Ex. C-1.

Immediately upon fully passing the patrol car, the Mini Cooper noticeably slowed down. The trooper believed that the operator of the Mini Cooper had been driving at an unsafe speed, in violation of 75 Pa.C.S. § 3361. The factors relied on by the trooper included: (1) driving approximately 20 mph over the speed limit; (2) passing a marked patrol car on the right; (3) it being at night where shadows could hide a deer waiting to run across the road; and (4) driving while nearing the crest of a hill over which the driver could not determine if there was an obstruction. The trooper initiated a stop by pulling into the right lane behind the Mini Cooper and turning on his overhead lights. N.T. Suppression Hearing, 7/5/23, 9-15.

Subsequent to the stop, the trooper came to believe Appellant was intoxicated and arrested him. Appellant was charged with one count of DUI, general impairment from the intake of alcohol rendering him incapable of safely driving. 75 Pa.C.S. § 3802(a)(1). The charging document also noted that Appellant was subject to a penalty enhancement for refusing testing. Appellant also was charged with multiple motor vehicle violations, including

driving a car at a speed greater than was reasonable and prudent under the conditions. 75 Pa.C.S. § 3361.

Alleging that the stop was illegal, Appellant moved to suppress the evidence obtained after the stop. Application for Suppression of Evidence, 6/6/23, 1-3; Trial Court Record, 85-87. The court held a suppression hearing on July 5, 2023. The only witness at the hearing was Trooper Kirkegard. At the conclusion, the court made findings of fact, including finding the trooper's testimony credible, and denied the motion. N.T. Suppression Hearing, 7/5/23, 30-33. The suppression court ruled that the stop was lawful because the trooper had probable cause of a violation of 75 Pa.C.S. § 3361, driving at an unsafe speed. *Id.*, 32.

The court held a stipulated bench trial on January 8, 2024, and found Appellant guilty of one count of DUI. Order, 1/8/24; Trial Court Record, 96. On May 23, 2024, the court imposed a term of three days to six months' imprisonment and a fine of $300. Sentencing Order, 5/23/24; Trial Court Record, 102. Appellant filed a timely motion to reconsider his sentence on May 24, 2024. The court denied the motion on May 30, 2024.

Appellant filed a timely notice of appeal on June 12, 2024. The court granted a stay of Appellant's sentence pending appeal. Order, 6/17/24; Trial Court Record, 132. Appellant complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement.

Appellant presents a single question for review:

Was the lower court correct in denying Appellant's motion to suppress all evidence discovered following an unlawful stop of Appellant and his unlawful detention?

Appellant's Brief, 4.

On appeal from an order denying a motion to suppress, we apply the following standard of review:

[We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by those findings and may reverse only if the [suppression] court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on the allegations of legal error, the suppression court's legal conclusions are not binding on the appellate court, 'whose duty it is to determine if the suppression court properly applied the law to the facts.' Thus, the conclusions of law of the [suppression court] are subject to our plenary review.

*Commonwealth v. Patterson*, 304 A.3d 1245, 1249 (Pa. Super. 2023) (*citing Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Cephus*, 208 A.3d 1096, 1098 (Pa. Super. 2019) (*quoting Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006)).

Traffic stops based on a reasonable suspicion, "either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section

6308(b)[,] must serve a stated investigatory purpose." ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*) (citation omitted). "For a stop based on an observed violation of the vehicle code or an otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop." ***Cephus***, 208 A.3d at 1099; ***accord Feczko***, 10 A.3d at 1291. We agree with the parties that probable cause was required here, "because the stop would not enable the trooper to learn anything more about whether [Appellant] was driving at an unsafe speed." ***Commonwealth v. Smith***, 237 A.3d 580, 583 (Pa. Super. 2020).

"Probable cause exists where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." ***Commonwealth v. Gibson***, 638 A.2d 203, 206 (Pa. 1994). It is a less demanding standard than the trial standard of beyond a reasonable doubt. ***Commonwealth v. Evans***, 661 A.2d 881, 885 (Pa. Super. 1995).

Section 3361 of the Motor Vehicle Code states in pertinent part:

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed … when approaching a hill crest … and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S. § 3361.

In denying the motion, the suppression court made the following findings of fact:

> On October 8th of 2022, [Trooper Kirkegard] was assigned to the Avondale Barracks and was working the p.m. shift. Close to the end of his shift, he was returning to the station on Route 1 northbound and south of 896 in Upper Oxford Township, Chester County.
>
> I find the trooper's testimony that he was traveling 65 miles per hour in the left lane to be credible. We could also see on the MVR[2] it was an uphill area of the roadway. In the video you can clearly see [Appellant's] vehicle come very quickly into the frame and then slow down quickly. It is a 55 mile per hour zone on the highway.
>
> I found the trooper's testimony that he was caught by surprise by the vehicle passing him on the right to be credible. And I do find that he did have enough probable cause to stop the vehicle for traveling at an unsafe speed.

N.T. Suppression Hearing, 7/25/23, 31-33.[3] In addition, the court explained in its Rule 1925(a) opinion that "[t]he terrain around the roadway is rural and in October there is an increased risk of deer running across the roadway." Trial Court Opinion, 8/12/24, 4.

Significantly, the suppression court also wrote:

_____

[2] MVR is the term used for the video recording from the dashboard video recorder in a patrol car. It shows what can be seen through the front windshield of a patrol car.

[3] Appellant has not challenged the court's factual findings. Nonetheless, we reviewed the transcript of the suppression hearing and Exhibit C-1, the video recovered from the dashboard camera of Trooper Kirkegard's patrol car, and find the court's factual findings are supported by the evidence. Appellant's high rate of speed in passing the patrol car on the right, the darkness on and near the road, and the approaching hill crest are all plainly visible on the video.

Trooper Kirkegard testified that he initiated the traffic stop because he observed Appellant travelling in excess of 15 to 20 MPH over the posted speed limit of 55 MPH, at night, on a dark highway that allowed limited visibility of the roadway ahead due to its upward incline. The conditions on the roadway and the speed at which Appellant's vehicle passed the trooper are reflected in the MVR footage.

Trial Court Opinion, 8/12/24, 5. The suppression court ruled that, based on "[t]he trooper's credible testimony and the MVR footage," there was probable cause that Appellant "committed a traffic offense, driving at an unsafe speed for the road conditions." *Id.*, 5-6.

Appellant argues the suppression court erred because the trooper did not have probable cause to stop him for a violation of 75 Pa.C.S. § 3361, as he was on a multi-laned highway and within the marked lines of an open driving lane. Appellant's Brief, 10.[4] He contends that the fact he was exceeding the speed limit did not provide reasonable suspicion, let alone probable cause, that he was driving at an unsafe speed under section 3361. Appellant's Brief, 16.

"There is no question that speeding alone does not constitute a violation of [section 3361]." *Commonwealth v. Heberling*, 678 A.2d 794, 795 (Pa. Super. 1996). Rather, there must be indicia that the speed "is unreasonable or imprudent under the circumstances (of which there must also be proof), which are the 'conditions' and 'actual and potential hazards then existing' of

_____

[4] Appellant also argues that the trooper did not have probable cause of a violation of 75 Pa.C.S. § 3304 (overtaking vehicle on the right). Appellant's Brief, 13-15. Because we find that the trooper did have probable cause that Appellant was driving at an unsafe speed, we need not address whether the trooper also had probable cause of a different violation.

the roadway." *Id.* at 795-796. These circumstances may include not only the amount of traffic, pedestrian travel, and weather conditions, but also the nature of the roadway itself. *Id.* at 796. "It is these circumstances under which one's speed may be found sufficiently unreasonable and imprudent to constitute a violation of section 3361, even if the driver has adhered to the posted speed limit." *Id.* at 796. "'Approaching a hill crest' and 'approaching … an intersection' are 'conditions' specifically enumerated in the statute that require a driver to proceed at a safe and appropriate speed." *Id.* at 797.

In *Heberling*, we affirmed a conviction under section 3361, based on proof beyond a reasonable doubt, where "a police officer saw [the defendant traveling] 'at an extreme rate of speed' in a 45 mile-per-hour zone … nearing an intersection … and the crest of a hill," even though the defendant was "stopped before reaching either of those two points." 678 A.2d at 794-95. In *Smith*, we held that a trooper had probable cause to stop Smith when he saw Smith's car pass him in the opposite direction "at a high rate of speed … for maybe a second or two" on a "windy, curvy, hilly" two-lane road with "lots of intersections … in the middle of nowhere." 237 A.3d at 581. We ruled that the trooper's uncontradicted testimony that Smith was driving 20 to 25 mph over the speed limit, an estimate based on his experience, and which speed was "unreasonable given the specific conditions on the road" supported the court's conclusion there was "probable cause to stop Smith for violating [s]ection 3361." *Id.* at 584.

Here, the nighttime conditions with no streetlight illumination, combined with the additionally limited visibility caused by Appellant nearing the crest of a hill at approximately 20 mph over the speed limit, provided ample basis to warrant a person of reasonable caution in the belief that the offense of driving at an unsafe speed was being committed by Appellant. Limited visibility and excessive speed are unsafe conditions. The trooper testified that it was "[a]bsolutely not" safe for Appellant to continue driving at that speed on a dark portion of the road near the crest of a hill. N.T. Suppression Hearing, 7/25/23, 14. Section 3361 is "is based on the 'common sense recognition that many driving situations require extra care.'" **Smith**, 237 A.3d at 583 (**quoting Heberling**, 678 A.2d at 796). It is presence of a condition or combination of conditions that informs whether the speed being driven is "reasonable and prudent," and not the presence or absence of any one particular factor. **See Heberling**, 678 A.2d at 798 ("Approaching hills and intersections logically demand caution beyond mere adherence to a posted speed limit; proof of unreasonable speed coupled with either of these roadway conditions makes out a violation of section 3361").

In addition, the trooper stressed that it was deer mating season during which deer regularly cross the road and could both cause accidents and be hidden in shadows near the side of the road. N.T. Suppression Hearing, 7/25/23, 8, 10. The increased possibility of a collision with a deer is another potentially dangerous road condition, particularly combined with a dark, rural road with limited visibility ahead and around. Appellant's high-speed driving

could make it impossible for him to detect possible hazards with his headlights, such as deer near the side of the road or over the crest of the hill, in time to stop.

In contrast to the precedent cited above, Appellant relies on a non-precedential decision of this Court to argue that probable cause was lacking.[5] Appellant's Brief, 16. Specifically, Appellant argues that in ***Commonwealth v. Nell***, 2020 WL 7353350 (Pa. Super., filed 12/15/20) (non-precedential decision) (477 MDA 2019), this Court affirmed a finding that probable cause was lacking for driving at an unsafe speed where ostensibly the "defendant passed the officer at an 'estimated speed of over 40 in a 25 [mph zone]' and continued at a 'high rate of speed through several different roadways' while in a residential neighborhood[,] which often had pedestrian traffic." Appellant's Brief, 16. To the contrary, Appellant relies on the argument the Commonwealth presented. Appellant quotes from the dissenting memorandum, where neither the suppression court nor the majority of a panel of this Court found the facts so compelling.

_____

[5] Pa.R.A.P. 126(b) provides that "an unpublished memorandum decision of the Superior Court filed after May 1, 2019 … may be cited for their persuasive value." Appellant does not indicate that any of the four unpublished memorandum decisions he cites were non-precedential in a parenthetical, or could be used only for persuasive value, as required by Pa.R.A.P. 126(a). Further, Appellant cites a memorandum decision from 2016, Appellant's Brief, 17 n.7, which may only be cited where, not here, it is the law of the case or related concepts. Pa.R.A.P. 126(d).

Rather, in **Nell**, the suppression court's findings included that: the officer was only "pretty sure" Nell was travelling at a high rate of speed; the dashcam video showed the officer did not observe Nell's "driving for much of the pursuit" and "[n]o useful conclusions regarding [Nell]'s speed could be garnered" from the video; and the "video did not reveal, in any conclusive way, [Nell]'s vehicle swerving" into the opposite lane of travel. **Id.** at *7 (recounting suppression court's findings). In light of those findings, the panel majority affirmed the grant of suppression, specifically "recog[nizing], as did the suppression court, that [**Nell** was] a close case based on a unique set of circumstances." **Id.** at *8.

Accordingly, we do not find Appellant's reliance on **Nell** persuasive. First, the appeal from the grant of suppression in **Nell** required this Court to view the evidence in favor of the driver where the video undercut the officer's belief. Here, we are obligated to read the record in favor of the Commonwealth, and the trooper's testimony was supported by the video evidence.

Second, the suppression court in **Nell** found that the only facts supporting a stop for driving at an unsafe speed was the momentary passing of Nell going in the opposite direction and later sighting him farther away than the officer would have expected and near a dip in the road. **Id.** at *2. Although the suppression court had "no doubt that [the officer] believed [Nell] was driving too fast[,] … looking for specific facts [*i.e.*, road conditions] that support the probable cause stop, I do not find them." **Id.**

Third, the record here is far stronger in support of probable cause than in ***Nell***. For example, the officer in ***Nell*** testified he was "pretty sure" that Nell was travelling at a high rate of speed when they passed going in opposite directions. ***Nell*** at *1. In comparison, here, Trooper Kirkegard knew he was travelling at 65 mph, 10 mph above the speed limit, when Appellant passed him going in the same direction at a speed approximately 10 mph faster than the patrol car. Thus, Trooper Kirkegard did not have to guess that Appellant was travelling at a high speed, he knew it from his own speed and experience. As another example, the officer's concern that Nell was speeding through a residential neighborhood was undercut by the video, which showed few parked cars and no pedestrians at 2:00 a.m. ***Nell*** at *8. Here, the trooper articulated additional safety concerns from Appellant's high-speed driving that were not contradicted: passing in the right lane at high speed, nearing the crest of a hill, no illumination on the road at night, shadows along the dark woods and the increased possibility of deer crossing from those shadows. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/25/2025

- 12 -